## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **ROBERT FILUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO. 1:11-CV-00106** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Robert Filus, who is proceeding *pro se*, appeals to the district court from a final

decision of the Commissioner of Social Security ("Commissioner") denying his application

under the Social Security Act (the "Act") for a period of disability and Disability Insurance

Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.)  For the

following reasons, the Commissioner's decision will be AFFIRMED.

### I.  PROCEDURAL HISTORY

Filus first applied for DIB and SSI on December 3, 1997, alleging disability as of August

2, 1996. (Tr. 428.)  On October 15, 1999, after a hearing, the Commissioner found that Filus

could perform a restricted range of light work and thus denied his application. (Tr. 428-38.)

Filus did not appeal that decision. (Tr. 18.)

Filus filed the instant application for DIB and SSI benefits on October 27, 2003, alleging

the same onset date of August 2, 1996. (Tr. 18.)  Filus was last insured for DIB on December 31,

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c). (Docket # 14.)

2002 (Tr. 19), and therefore, he must establish that he was disabled as of that date in order to recover DIB benefits. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).  The Commissioner denied Filus's application initially and upon reconsideration, and Filus requested an administrative hearing. (Tr. 74-86.)  A hearing was conducted by ALJ Steven Neary, at which Filus (who appeared *pro se*) and a vocational expert testified. (Tr. 650-69.)  On June 27, 2007, the ALJ rendered an unfavorable decision to Filus, concluding again that he was not disabled because he could perform a restricted range of light work. (Tr. 64-73.)

The Appeals Council granted Filus's request for review of the ALJ's decision and ultimately remanded the case. (Tr. 578-80.)  On remand, ALJ Don Paris conducted two hearings at which Filus (who this time was represented by counsel at both hearings) and a vocational expert testified. (Tr. 670-713.)  On January 13, 2010, the ALJ for the third time denied Filus's application, again concluding that he could perform a restricted range of light work. (Tr. 18-26.) The Appeals Council denied Filus's request for review, at which point ALJ Paris's decision became the final decision of the Commissioner. (Tr. 11-13.)

Filus filed a complaint with this Court on March 29, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.)  In his appeal, Filus advances a laundry list of purported errors by the ALJ, including (1) finding that Filus's degenerative disk disease did not meet or equal Listing 1.04, Disorders of the Spine; (2) improperly weighing the medical source opinions; and (3) improperly discounting the credibility of Filus's symptom testimony.  In addition, Filus asks that the Court consider additional evidence that was not before the ALJ. (Docket # 15.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Filus was forty-seven years old; had a high school education; and possessed work experience as a laborer, truck driver, painter, asphalt worker, tree trimmer, and in fixing up old houses. (Tr. 126, 678.)  Filus alleges that he is disabled due to back pain associated with degenerative disk disease. (Opening Br. 2.)

At the hearings, Filus testified that he lives in a rental home with his girlfriend, who is employed, and her mother, who receives Social Security benefits. (Tr. 677, 691.)  He independently performs his self care and meal preparation. (Tr. 692-93.)  He borrows a car several times a month to drive to the grocery store. (Tr. 677-78.)  His typical day involves rising about 11:00 a.m.; performing basic household tasks, including sweeping the floor and doing laundry; caring for pets; sometimes walking to the nearby gas station for cigarettes and groceries; and alternating between lying down and sitting. (Tr. 693-95.)  Filus estimated that he could walk, stand, or sit for thirty minutes at a time. (Tr. 687, 689.)  He stated that if he walks, stands, or sits for longer than thirty minutes at one time, he has to lie down for a full day to recover. (Tr. 689.)     Filus testified that his back pain is primarily centered in his "mid-back" and does not radiate to his extremities. (Tr. 685.)  He elaborated that the pain ranges from feeling "sharp" and burning" to "numb and throbbing." (Tr. 685-86.)  The pain worsens with stress and "any kind of physical movement," including sitting. (Tr. 686.)  Filus stated that he has received epidural injections and physical therapy, which temporarily worked but did not resolve the problem. (Tr. 682.)  He also uses heat and ice to relieve his symptoms; however, he takes no

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 713-page administrative record necessary to the decision.

3

prescription or over-the-counter medications. (Tr. 683, 687.)

### B.  Summary of the Relevant Medical Evidence Before the ALJ

On November 17, 1995, Dr. Steven Cremer diagnosed Filus with "lumbar disk degeneration by history exacerbated by a motor vehicle accident." (Tr. 347.)  Filus received physical therapy and an epidural injection. (Tr. 200-12.)  In December, Dr. Isa Canavati, a neurosurgeon, diagnosed Filus with a lumbar strain and mild disk protrusion at L4-5 and L5-S1. (Tr. 555-56.)  He recommended that Filus continue lower back exercises, return to work with a twenty-pound lifting restriction, and avoid repeated bending and twisting for at least one month. (Tr. 555-56.)

In January 1996, a physical therapist documented that although Filus continued to report some pain, he had normal range of motion and good lower extremity flexibility. (Tr. 217-18.)  A functional capacity evaluation indicated that he was able to perform most tasks of his job. (Tr. 217.)  The physical therapist recommended that Filus return to work with the limitations of frequent lifting of forty pounds, maximum lifting of sixty pounds, and standing for two hours at a time for a total of six hours standing in a workday. (Tr. 217-18.)

In February 1996, Dr. Cremer felt that Filus had reached maximum medical improvement, and therefore he was assigned a five percent impairment rating and released to return to work without restriction. (Tr. 347-51.)  In September 1996, Dr. Canavati saw Filus for a "flare-up" of his low back pain. (Tr. 552-53.)  An MRI showed degenerative disk disease and mild protrusion at the L4-5 and L5-S1 levels. (Tr. 552.)  He had intact strength in both lower extremities, and a straight leg raising test was positive bilaterally with an increase in lower back pain. (Tr. 552.)  Dr. Canavati diagnosed Filus with an acute lumbar strain. (Tr. 552.)

That same month, Dr. William Washington of the Rehabilitation Hospital of Fort Wayne diagnosed Filus with sacroiliac joint dysfunction, pelvic asymmetry, and probable L5 radiculopathy secondary to a herniated disk at the L4-5 level. (Tr. 242-58, 368-70.)  He put Filus off work for several weeks, and Filus attended physical therapy. (Tr. 266-304, 363, 370.) Another functional capacity evaluation indicated that Filus could perform light to medium work for an eight-hour workday. (Tr. 304-45.)  During the evaluation, Filus displayed fair effort but some indicators of sub-maximal effort. (Tr. 304.)  Dr. Washington assigned work restrictions consistent with the functional capacity test results and a home exercise program. (Tr. 348, 357-61.)

On January 2, 1997, Dr. Washington observed that Filus had some low back tenderness but a negative straight leg raising test; Dr. Washington diagnosed him with chronic L5 radiculopathy and probable right sacroiliac dysfunction. (Tr. 354.)  Filus declined Dr. Washington's offer of an epidural injection. (Tr. 354.)  Dr. Washington recommended that Filus seek "employment of a more sedentary nature." (Tr. 354.)

The next day, Filus was evaluated by Dr. Mark Reecer, a physiatrist, at the request of his employer. (Tr. 347-51.)  Dr. Reecer diagnosed him with a lumbar strain with complaints of back pain, opined that he was at maximum medical improvement and that his conservative treatment program had been appropriate, and saw no indication for further diagnostic studies or treatment. (Tr. 350-51.)  He agreed with Dr. Cremer in assigning a total permanent partial impairment rating of five percent of the whole person. (Tr. 351.)

In July 1997, Filus saw Dr. Dan Wilcox of Spine Technology and Rehabilitation, P.C. (Tr. 380.)  Filus reported that he had intermittent symptoms but was still able to perform some

5

work for his own business, including painting. (Tr. 380.)  Dr. Wilcox observed that Filus had normal sensation, muscle strength, reflexes, and range of motion; he found no signs suggestive of L5 radiculopathy or sacroiliac joint dysfunction. (Tr. 380-82.)  He recommended that Filus continue his home exercise program. (Tr. 380.)

In January 1998, Filus saw Dr. Steven Schroeder for a second opinion. (Tr. 387-91.)  Dr. Schroeder observed that Filus had limited range of motion in his low back and hamstring tightness and discomfort, but normal reflexes. (Tr. 388.)  He diagnosed Filus with chronic lumbar musculoligamentous strain. (Tr. 388.)  The following month, Dr. Shroeder stated that it was highly unlikely that Filus would ever return to heavy work or continuous, repetitive activities that require use of the low back muscles. (Tr. 385-86.)  He emphasized, however, that Filus was "not totally disabled" and should strongly consider vocational rehabilitation. (Tr. 386.) He thought that, ideally, Filus would find a job "where he could do some sitting, some standing, and primarily using manual dexterity other than brut [sic] strength." (Tr. 386.)  He recommended that Filus take over-the-counter medications and continue his exercises. (Tr. 385.)

In February 1998, Dr. Michael Holton examined Filus. (Tr. 396-98.)  He observed that Filus had tenderness in his low back but a normal neurological examination. (Tr. 396-98.)  Filus exhibited a normal gait and station and had no perceived difficulty in walking on heels and toes, tandem walking, hopping, or squatting. (Tr. 397.)  He diagnosed Filus with chronic lumbar musculoligamentous back pain with no evidence of radiculopathy. (Tr. 397.)

In March 1998, Dr. William Bastnagel, a state agency physician, reviewed Filus's record and concluded that he could lift ten pounds frequently and twenty pounds occasionally; sit for six hours in an eight-hour workday; stand or walk for six hours in a workday; perform unlimited

pushing and pulling; and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 399-406.)  His opinion was later affirmed by a second state agency physician. (Tr. 399.)

In June 1998, Filus returned to Dr. Cremer, who diagnosed him with chronic lumbar pain. (Tr. 422-23.)  Filus had a positive straight leg raising test, with back pain radiating into both hamstrings; however, he had intact sensation, reflexes, hip range of motion, and muscle strength. (Tr. 422-23.)  He exhibited some amplified pain behaviors. (Tr. 422-23.)  Dr. Cremer recommended that Filus consider discography and low-dose narcotic pain medication. (Tr. 423.)

In November 1999, Dr. Shroeder observed that Filus had marked limitation in range of motion of his low back, a positive straight leg raising test bilaterally, and some decreased sensation in his left leg, but no muscle spasms or atrophy. (Tr. 538-39.)  He recommended that Filus undergo a lumbar MRI, but noted that he was uninsured. (Tr. 539.)

In October 2003, Dr. Robert Schloss, Filus's family practitioner, completed a statement of medical condition for food stamp eligibility, representing that Filus was totally unable to work. (Tr. 600.)

On April 22, 2004, Filus saw Dr. Rudy Kachmann for a second opinion. (Tr. 534.)  He observed that Filus had pain and muscle spasms with range of motion of his lumber spine, a positive straight leg raising test bilaterally, a stooped posture, and absent ankle reflexes, but normal knee reflexes. (Tr. 534.)  An MRI showed degenerative disk disease with mild disk bulges at L4-5 and L5-S1. (Tr. 533.)  He opined that Filus had "failed back syndrome" secondary to advanced degenerative disk disease and stated that he considered him currently "disabled." (Tr. 534.)  He further indicated, however, that attempts should be made "for some job retraining for light work." (Tr. 534.)

7

In June 2004, Dr. B. Whitley, a state agency physician, reviewed Filus's record and concluded that he could lift twenty-five pounds frequently and fifty pounds occasionally; sit for about six hours in an eight-hour workday; stand or walk for six hours in a workday; perform unlimited pushing and pulling; frequently climb, balance and stoop; and occasionally kneel, crouch, and crawl. (Tr. 560-67.)  His opinion was later affirmed by a second state agency physician. (Tr. 567.)

In November 2006, Dr. Venkata Kancherla examined Filus. (Tr. 568-71.)  He observed that Filus had a normal gait; no tenderness over his lumbar spine; and could recline flat, sit up, heel and toe walk, squat, and get on and off the examination table without assistance. (Tr. 569.)  Filus had a positive straight leg raising test bilaterally, pain upon range of motion in his hips, and some limited range of motion in his low back, but normal sensation, reflexes, and muscle strength. (Tr. 569.)  In January 2007, Dr. Kancherla opined that Filus could lift and carry twenty pounds frequently; stand and walk without limitation; and occasionally climb, kneel, crouch, crawl, and stoop, but had some limitation in pushing and pulling with his legs. (Tr. 573-76.)

In September 2007, Dr. Kachmann saw Filus for the first time in three years. (Tr. 598, 604.)  He documented that Filus had pain upon range of motion in his low back, a positive straight leg raising test bilaterally, and absent knee and ankle reflexes. (Tr. 598.)  He again diagnosed Filus with failed back syndrome secondary to advanced lumbar degenerative disk disease. (Tr. 598, 604.)  He stated that Filus could not afford another MRI and that he saw no benefit in retraining Filus because no one would hire him. (Tr. 598, 604.)  He clarified that when he recommended in 2004 that Filus be retrained for light work, he did not mean that Filus could perform substantial gainful activity and that "time has certainly shown this to be so." (Tr. 608.)

He further opined that Filus could occasionally kneel, crawl, crouch, or bend; never climb ladders, ropes, or scaffolds; could not sit or stand or engage in any combination of the two activities for more than thirty minutes; and could not "go back from sitting to standing over and over." (Tr. 608.)

In August 2009, Dr. Kooros Sajadi examined Filus. (Tr. 633-43.)  He noted that Filus had a normal gait and was able to heel and toe walk and tiptoe without difficulty. (Tr. 634.)  Filus had tenderness at the lumbosacral area, but a negative straight leg raising test, no muscle spasms, and normal sensation and reflexes. (Tr. 634.)  An x-ray showed arthritic changes and disk space narrowing at L4-5 and L5-S1. (Tr. 634-35.)  He diagnosed Filus with low back pain due to degenerative disk arthritis of the lumbar spine and degenerative disk disease at L4-5 and L5-S1. (Tr. 635.)  He concluded that Filus could lift and carry twenty pounds continuously and fifty pounds occasionally; sit for two hours at a time and for a total of two hours in an eight-hour workday; stand for two hours at a time and for a total of two hours in a workday; walk for two hours at time and for a total of two hours in a workday; and continuously reach, push and pull, perform postural activities, and operate foot controls. (Tr. 638-39.)

In November 2009, Dr. James Owen examined Filus. (Tr. 645-46.)  Dr. Owen observed that Filus cried during range of motion due to pain; could squat, heel and toe walk, and tandem walk with pain; and got off and on the examination table with obvious discomfort. (Tr. 645.) However, he had a negative straight leg raising test and normal strength, sensation, and reflexes. (Tr. 645.)  Dr. Owen diagnosed Filus with persistent back pain associated with L5 radiculopathy, concluding that he would have severe difficulty with lifting, handling, carrying, and traveling. (Tr. 646.)  He thought that Filus should undergo a psychiatric evaluation and another evaluation

by a neurosurgeon to better identify the source of his pain in the event that it could be treated through surgery. (Tr. 646.)

### C.  Medical Evidence Before the Court But Not the ALJ

On July 26, 2011, Dr. Kachmann penned a letter "to whom it may concern" stating that he considered Filus to have failed back syndrome even though some people say that surgery is required for such a diagnosis. (Opening Br. 9.)  He reported that Filus has a fifty percent limitation in range of motion of his lumbar spine; a positive straight leg raising test bilaterally; and absent ankle reflexes. (Opening Br. 9.)  He stated that he "took a further medical history and found that [Filus's] pain does not go away after a half hour of rest in spite of switching positions." (Opening Br. 9.)  He reiterated his previous opinion that Filus was "not employable" and could not "be re-educated for other types of work." (Opening Br. 9.)

On August 4, 2011, an MRI indicated lumbar spondylosis. (Opening Br. 11.) Specifically, it showed mild to moderate narrowing of the lateral recess at L4-5 secondary to a posterior disk osteophyte complex with mild to moderate mass effect upon the ventral aspect of the thecal sac and possible L5 descending nerve roots, but no central spinal stenosis. (Opening Br. 11.)

## III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

10

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV.  ANALYSIS

### A.  The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

11

impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B.  The ALJ's Decision

On January 13, 2010, ALJ Paris rendered the decision that ultimately became the Commissioner's final decision. (Tr. 18-26.)  He found at step one of the five-step analysis that Filus had not engaged in substantial gainful activity since his alleged onset date and at step two that his degenerative disk disease of the lumbar spine was a severe impairment. (Tr. 20.) At step three, the ALJ determined that Filus's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 21.)

Before proceeding to step four, the ALJ determined that Filus's testimony of debilitating limitations was not credible to the extent it was inconsistent with the following RFC (Tr. 24):

> [T]he claimant has the residual functional capacity to perform a range of light work . . . except he will [require] a sit/stand option at 30 minute intervals; no more than frequent balancing or stooping; only occasionally kneeling, crouching,

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

crawling, or bending; is precluded from climbing ropes or ladders and should
avoid concentrated exposure to unprotected heights.

(Tr. 21.)

Based on this RFC and the vocational expert's testimony, the ALJ concluded at step four

that Filus was unable to perform any of his past relevant work. (Tr. 24.)  The ALJ then

concluded at step five that he could perform a significant number of light work jobs within the

economy, including booth cashier, bench assembly, and inspecting/sorting. (Tr. 25.)

Accordingly, Filus's claims for DIB and SSI were denied. (Tr. 25-26.)

### C.  Discussion

Filus's *pro se* appeal of the Commissioner's final decision essentially equates to a plea to

this Court to reweigh the evidence with the hope that it will come out in his favor this time.  To

that end, Filus rather conclusorily asserts that the ALJ committed numerous errors, including

finding that his degenerative disk disease did not meet or equal Listing 1.04, improperly

weighing the medical source opinions, and improperly discounting the credibility of his

symptom testimony.  Filus also asks that the Court consider additional evidence that was not

before the ALJ.  Of course, a plea to the Court to reweigh evidence or resolve conflicts in

evidence is ultimately unavailing. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000)

(explaining that the court is not allowed to substitute its judgment for the ALJ by "reweighing

evidence" or "resolving conflicts in evidence").  Nevertheless, the Court will address each of

Filus's assertions in turn.

1.  <u>The ALJ's Conclusion that Filus's Degenerative Disk Disease Did Not Meet or Equal
Listing 1.04 Is Supported by Substantial Evidence</u>

At step three, the ALJ considered Filus's spinal impairments but determined that they

were not severe enough to meet List 1.04, Disorders of the Spine.  Upon review of the record,

the ALJ's finding at step three is supported by substantial evidence.

To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the

listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999).  The criteria of

Listing 1.04 is as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
>   A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
>   B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once very 2 hours;
>
> or
>
>   C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpart P, App. 1, 1.04.  The claimant bears the burden of proving his

condition meets or equals a listed impairment. *Maggard*, 167 F.3d at 379-80.

Here, the ALJ specifically contemplated Listing 1.04, but observed that the evidence did

not satisfy the Listing's criteria. (Tr. 21.)  More particularly, the ALJ pointed out that the record

was devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis

with accompanying ineffective ambulation. (Tr. 21.)

The ALJ's conclusion is indeed supported by the evidence of record.  Filus has not cited to any evidence before the ALJ that establishes he had nerve root compression with motor weakness or spinal arachnoiditis. (Reply Br. 2); *see, e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (rejecting claimant's assertion that she met a listing where "none of the evidence that [she] contends the ALJ ignored or misstated establishes that her impairments met or equaled in severity the criteria under [the] listings").  In fact, the MRI reports Filus cites indicates just the opposite. (*See* Tr. 424, 531.)  And, although Filus was diagnosed with lumbar spinal stenosis, he does not satisfy the criteria for "ineffective ambulation." *See generally* 20 C.F.R. §§ 404.1525(d), 416.925(d) (explaining that a claimant's impairment cannot meet the criteria of a listing based only on a diagnosis).  An inability to ambulate effectively is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 404, Subpart P, App. 1, 1.00B2b(1).  Examples of ineffective ambulation include an inability to walk without a walker or two crutches, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, and the inability to carry out routine ambulatory activities, such as shopping and banking. 20 C.F.R. § 404, Subpart P, App. 1, 1.00B2b(2).

Here, Dr. Kancherla's and Dr. Sajadi's examination results indicated that Filus had a normal gait and could heel and toe walk without difficulty. (Tr. 569, 634.)  Filus also testified that he ambulates without any assistive devices and performs all of his activities of daily living independently, including going grocery shopping and walking to the gas station for cigarettes.

15

Therefore, on this record, Filus fails to carry his burden of establishing that he satisfies all of the criteria for Listing 1.04.

      2.  <u>The ALJ's Consideration of the Medical Source Opinions Is Supported by Substantial Evidence</u>

Next, Filus contends that the ALJ erred in discounting Dr. Kachmann's opinion and portions of Dr. Sajadi's and Dr. Owen's opinions.  Filus's argument, however, falls short, as substantial evidence supports the ALJ's decision to discount these opinions.

Although an ALJ may ultimately decide to adopt the opinions expressed in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p. The RFC assessment "is based upon consideration of *all* relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p (emphasis added); *see* 20 C.F.R. §§ 404.1545, 416.945.  Thus, a medical source opinion concerning a claimant's work ability is not determinative of the RFC assigned by the ALJ. *See* SSR 96-5p ("[A] medical source statement must not be equated with the administrative finding known as the RFC assessment.").

Here, the ALJ concluded that Filus had the RFC to perform light work, which generally requires the ability to lift ten pounds frequently and twenty pounds occasionally and stand or walk six hours out of an eight-hour workday, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), except that he found Filus required a sit to stand option at thirty minute intervals; could no more than

frequently balance or stoop and occasionally kneel, crouch, crawl, or bend; could not climb

ropes or ladders; and must avoid unprotected heights.  As the ALJ explained, this RFC is

consistent with the limitations opined by Dr. Kancherla, an examining physician, in November

2006, as well as the opinion of Dr. Schroeder, a treating physician, in 1998.  It also, for the most

part, reflects the limitations assigned in 2009 by Dr. Sajadi, another examining physician.  Of

course, as a general matter, "[s]tate agency medical and psychological consultants and other

program physicians and psychologists are highly qualified physicians and psychologists who are

also experts in Social Security disability evaluation" and an ALJ is entitled to rely upon their

opinions. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); *see Dixon*, 270 F.3d at 1177

(acknowledging that a consulting physician's opinion may offer "the advantages of both

impartiality and expertise"); *Smith v. Apfel*, 231 F.3d 433, 442-43 (7th Cir. 2000) (emphasizing

that a consulting physician may bring expertise and knowledge of similar cases).

The ALJ did indeed acknowledge that the RFC he assigned to Filus conflicts with the

opinion of Dr. Kachmann, a treating physician, and a portion of the opinions of Dr. Owen and

Dr. Sajadi, both examining physicians.  The ALJ, however, affirmatively resolved these

conflicts. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (explaining that when the

record contains conflicting medical evidence, the ALJ has an affirmative responsibility to

resolve that conflict).  The ALJ emphasized that Dr. Kachmann's opinion that Filus was

"disabled" and "unemployable" was an opinion on an issue reserved to the Commissioner and

thus was not entitled to controlling weight. (Tr. 23); *see* 20 C.F.R. §§ 404.1527(e), 416.927(e);

SSR 96-5p.  The ALJ also accurately observed that Dr. Kachmann's opinion, including his view

that Filus could not sit or stand in any combination for more than thirty minutes, was "not well

17

supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record." (Tr. 23)*; see Clifford*, 227 F.3d at 870 ("[A] treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record."); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

In addition, he considered that Dr. Kachmann had only "limited contact" with Filus and that "his most recent records contain a cursory examination after an extended period with no contact whatsoever." (Tr. 23-24); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It would be exceedingly illogical to credit a doctor's opinion because he is more likely to have a detailed and longitudinal view of the claimant's impairments when in fact, there is no detail or longitudinal view." (emphasis omitted)).  Therefore, the ALJ provided sound reasons, grounded in the record, for discounting Dr. Kachmann's opinion. *See generally Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007*)* ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." (quoting *Stephens*, 766 F.3d at 289)).

Similarly, the ALJ rejected Dr. Owen's November 2009 opinion that Filus would have severe difficulty lifting, handling, or carrying objects, and in traveling. (Tr. 22.)  The ALJ astutely observed that Dr. Owen's severe restrictions lacked the support of his own examination findings, which reflected a negative straight leg raising test and normal heel and toe walking, tandem walking, squatting, strength, sensation, and coordination. (Tr. 22.)  Thus, the ALJ concluded that, like Dr. Kachmann's opinion, Dr. Owen's opinion was not well supported by

18

medically acceptable clinical and laboratory diagnostic techniques and was internally

inconsistent. (Tr. 22); *see Smith*, 231 F.3d at 441 (discounting a physician's opinion because it

was, among other things, internally inconsistent); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)

("The more a medical source presents relevant evidence to support an opinion, particularly

medical signs and laboratory findings, the more weight we will give that opinion.").

    As to Dr. Sajadi's August 2009 opinion, the ALJ, for the most part, found his assigned

restrictions consistent with his clinical findings, the x-rays and MRI results, and other substantial

evidence of record. (Tr. 23.)  That is, the ALJ found that most of Dr. Sajadi's restrictions—that

Filus could lift twenty pounds continuously and fifty pounds occasionally; sit, stand, and walk

for two hours at a time; and continuously reach, handle, finger, feel, push and pull, use foot

controls, climb, balance, stoop, kneel, crouch, and crawl—were supported by his clinical

findings, which included normal gait, heel and toe walking without difficulty, negative straight

leg raising test, and intact sensation and deep tendon reflexes.  The ALJ, however, rejected Dr.

Sajadi's opinion that Filus could not complete an eight-hour workday, finding that it was not

supported by his overall "normal" examination results, thereby resolving the conflict between

this portion of the opinion and the RFC ultimately assigned. (Tr. 23); *see Smith*, 231 F.3d at 441;

20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

    In the end, "[w]eighing conflicting evidence from medical experts . . . is exactly what the

ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001-02 (7th Cir. 2004); *see Cannon*,

213 F.3d at 974 (emphasizing that the Court is not allowed to substitute its judgment for the ALJ

by "reweighing evidence" or "resolving conflicts in evidence").  Here, the ALJ's consideration

of the medical source opinions, and his resolution of the conflicts therein, is supported by

substantial evidence. *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) ("[I]t is up to the

ALJ to decide which doctor to believe—the treating physician who has experience and

knowledge of the case, but may be biased, or . . . the consulting physician, who may bring

expertise and knowledge of similar cases—subject only to the requirement that the ALJ's

decision be supported by substantial evidence." (citation omitted)).  Therefore, Filus's second

argument fails to warrant a remand of the Commissioner's final decision.

    3.  <u>A Sixth Sentence Remand for Consideration of New Evidence Is Not Warranted</u>

      In support of his argument that the ALJ improperly discounted Dr. Kachmann's opinion,

Filus attaches to his Opening Brief a July 2011 letter from Dr. Kachmann and an MRI report of

his lumbar spine from August 2011. (*See* Opening Br. 4, 9-11.)  This evidence, however, was not

before the ALJ when he made his decision.  Of course, "the decision reviewed in the courts is the

decision of the administrative law judge.  The correctness of that decision depends on the

evidence that was before him." *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d

815, 817 (7th Cir. 1993) (explaining that an ALJ "cannot be faulted for having failed to weigh

evidence never presented to him").  Therefore, such evidence can only be considered in the

context of a request for a sixth sentence remand.  Filus, however, has not requested a sixth

sentence remand.

      Even if Filus had made such a request, a sixth sentence remand is not warranted on this

record.  The sixth sentence of 42 U.S.C. § 405(g) permits a remand "only upon a showing that

there is new evidence which is material and that there is good cause for the failure to incorporate

such evidence into the record in a prior proceeding . . . ."  For sixth sentence purposes,

"'materiality' means that there is a 'reasonable probability' that the Commissioner would have

reached a different conclusion had the evidence been considered, and 'new' means evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993)).

Applying this legal standard, Dr. Kachmann's July 2011 letter does not constitute "new" or "material" evidence, as the letter merely responds to the ALJ's discussion of Dr. Kachmann's diagnosis of failed back syndrome, repeats his earlier 2004 and 2007 diagnostic findings, and then opines on the ultimate issue of disability. Thus, Dr. Kachmann's letter was not based on any new evidence or recently-discovered findings that were unavailable to Filus prior to the administrative proceedings. *Compare Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988) (finding that a psychological evaluation performed after the ALJ's decision was new evidence as "it was not in existence at the time of the administrative proceedings"), *with Sampl*e, 999 F.2d at 1144 (emphasizing that a physician's report derived from medical evidence already in the record did not constitute new information); *see also Perkins*, 107 F.3d at 1296; *Harris v. Barnhart*, No. 03 C 3185, 2005 WL 1655202, at *15 (N.D. Ill. Apr. 26, 2005) ("Evidence is new if it is not merely cumulative."). In that same vein, since it merely reiterates Dr. Kachmann's prior findings, there is not a "reasonable probability" that the ALJ would have reached a different conclusion had he considered Dr. Kachmann's letter.[4] *Perkins*, 107 F.3d at 1296.

---

[4] Nor does Filus show good cause why Dr. Kachmann's letter was not timely produced during the prior administrative proceedings. Indeed, "such a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process." *Perkins*, 107 F.3d at 1296; *see also Sample*, 999 F.2d at 1144; *Keys v. Barnhart*, No. 01 C 8334, 2002 WL 31369793, at *8-9 (N.D. Ill. Oct. 21, 2002); *Romanoski v. Sullivan*, No. 91 C 8113, 1992 WL 346417, at *8 (N.D. Ill. Nov. 19, 1992) (failing to find good cause where claimant waited until after the ALJ's opinion was rendered to seek out a psychological evaluation and offered no explanation for his delay).

Nor is Filus's August 2011 MRI report "material."  Although the MRI showed for the first time an osteophyte complex that *possibly* affects the L5 descending nerve roots, "[m]edical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement."[5] *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) (citing 20 C.F.R. § 404.970(b)); *see also Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005); *McCurrie v. Astrue*, No. 09 cv 3371, 2010 WL 333696, at 5-6 (N.D. Ill. Jan. 25, 2010) (denying a remand where the purportedly new evidence, which spoke only to the claimant's current back condition, postdated the ALJ's decision by nearly ten months).  "This principle holds even if the records document new treatment for 'the very same ailments' at issue in the underlying disability proceedings." *Bybee v. Astrue*, No. 1:11-cv-271, 2011 WL 6151603, at *4 (S.D. Ind. Dec. 9, 2011) (citing *Schmidt*, 395 F.3d at 742).

In sum, Filus's plea that this Court consider Dr. Kachmann's July 2011 letter and his August 2011 MRI report—evidence that was not before the ALJ—is misplaced.  In any event, even if Filus had requested a sixth sentence remand to consider this additional evidence, which he did not, a sixth sentence remand is not warranted.  Of course, "[i]f [Filus] has developed additional impairments, or his impairments have worsened, since his . . . application for benefits, he may submit a new [SSI] application." *Getch*, 539 F.3d at 484; *see Bybee*, 2011 WL 6151603, at *4 ("Evidence suggesting that a claimant has developed additional impairments or that his impairments have worsened may form the basis for a new application but are not a basis to reverse the decision on a previously submitted application.").

---

[5] Of course, the relevant time period with respect to Filus's DIB application was more than eight years earlier, that is, December 31, 2002, his date last insured. *See Stevenson*, 105 F.3d at 1154.

4. <u>The ALJ's Credibility Determination Will Not Be Disturbed</u>

Finally, Filus contends that the ALJ improperly discounted the credibility of his symptom testimony.  This assertion is no more successful than his three prior arguments.

Credibility determinations are the second step in a two-step process prescribed by the regulations for evaluating a claimant's request for disability benefits based on pain or other symptoms. *Williams v. Astrue*, No. 1:08-cv-1353, 2010 WL 2673867, at *9-10 (S.D. Ind. June 29, 2010); *Behymer v. Apfel*, 45 F. Supp. 2d 654, 662 (N.D. Ind. 1999); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment—that is, an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms. *Krontz v. Astrue*, No. 1:07-cv-00303, 2008 WL 5062803, at *5 (N.D. Ind. Nov. 24, 2008); *Williams v. Chater*, 915 F. Supp. 954, 964 (N.D. Ind. 1996); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  If the record does not allow the ALJ to make such a finding, then that ends the inquiry, for a finding of disability cannot be made solely on the basis of the claimant's symptoms, even if they appear genuine. SSR 96-7p.

If, however, the medical evidence shows the existence of an underlying impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p; *see Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Walker v. Astrue*, No. 4:09-cv-44, 2010 WL 1257441, at *5 (S.D. Ind. Mar. 25, 2010); *Bellmore v. Astrue*, No. 4:08-cv-94, 2010

23

WL 1266494, at *10 (N.D. Ind. Mar. 5, 2010); 20 C.F.R. §§ 404.929(c), 416.929(c).  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7p.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, the ALJ concluded that Filus had an underlying medically determinable physical impairment that could reasonably be expected to produce his alleged symptoms. (Tr. 24.) Accordingly, the ALJ did not end his inquiry after step one, but proceeded to step two of the credibility determination process to evaluate the functionally limiting effects of Filus's alleged symptoms to determine the extent to which they would affect his ability to do basic work activities. *See Herron*, 19 F.3d at 334; 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.  In doing so, the ALJ considered the various factors prescribed by 20 C.F.R. §§ 404.1529(c) and 416.929(c), ultimately concluding that Filus's statements concerning the intensity, persistence, and limiting effects of his symptoms were not persuasive to the extent that they were inconsistent with the

assigned RFC. (Tr. 24.)

In assessing the credibility of Filus's complaints, the ALJ first thoroughly considered the medical source opinions, as described *supra*, and the objective medical evidence.  Of course, an ALJ is entitled to consider the objective medical evidence, or lack thereof, as a factor in assessing credibility, and "may properly discount portions of a claimant's testimony based on discrepancies between [the c]laimant's allegations and objective medical evidence." *Crawford v. Astrue*, 633 F. Supp. 2d 618, 633 (N.D. Ill. 2009); *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Smith*, 231 F.3d at 439 ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility."); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p.  Of course, to reiterate, "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *see generally Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports [his] claims of disability.").

The ALJ also considered Filus's activities of daily living when assessing the credibility of his symptom testimony.  The ALJ specifically noted that Filus does laundry, sweeps the floors, prepares simple meals, and goes grocery shopping several times a month. (Tr. 24.)  He also observed that he cares for pets, drives a car, independently performs his self care, and walks to the gas station for cigarettes. *See Schmidt*, 395 F.3d at 746-47 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

25

In addition, the ALJ pointed out that Filus used "*no* medication whatsoever, either prescription or over the counter, to treat his pain." (Tr. 24 (emphasis added).)  The ALJ is entitled to consider the type of treatment, or lack thereof, that a claimant has undergone when determining that claimant's credibility. *See Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) (affirming the ALJ's discounting of claimant's complaints of debilitating fatigue given the discrepancies between her self-reported symptoms and the lack of treatment for the purported condition); 20 C.F.R. §§ 404.929(c)(3), 416.929(c)(3) (considering a claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); SSR 96-7p; *see also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009).

Moreover, the ALJ did indeed credit Filus's subjective symptom testimony to some extent, acknowledging that his degenerative disk disease is a severe impairment. *See generally Hodges v. Astrue*, No. 1:09-cv-00216, 2010 WL 3717256, at *9 (N.D. Ind. Sept. 14, 2010) (explaining that the relevant inquiry is whether the claimant's pain "was of a disabling severity" during the relevant period, not the diagnosis that he was assigned).  Accordingly, to accommodate his back limitations, the ALJ restricted Filus to light work with a sit to stand option at thirty minute intervals; no more than frequent balancing or stooping and occasional kneeling, crouch, crawling, or bending; and no climbing ropes or ladders or exposure to unprotected heights. *See, e.g.*, *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. Mar. 3, 2008) (affirming ALJ's credibility determination where he discredited the claimant's symptom testimony only in part).

In sum, the ALJ adequately considered the credibility of Filus's symptom testimony in accordance with the factors identified in 20 C.F.R. §§ 404.1529(c) and 416.929(c) and ultimately

determined that they were not of disabling severity.  In doing so, the ALJ adequately built an

accurate and logical bridge between the evidence and his conclusion, and his determination is

not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at

435.  Therefore, the ALJ's credibility determination, which is entitled to special deference,

*Powers*, 207 F.3d at 435, will not be disturbed.[6]

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The

Clerk is directed to enter a judgment in favor of the Commissioner and against Filus.

SO ORDERED.  Enter for this 28th day of December, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[6] Filus also argues that the ALJ ignored the vocational expert's response to the following hypothetical and that the vocational expert's answer is conclusive evidence of his disability (Opening Br. 7):

Q  Okay.  If an individual had limitations consistent with Mr. Fil[]us'–

A  Fil[]us' testimony.
. . . .
Q  Would those limitations, would there be any jobs such an individual can perform that exist in significant numbers?

A  Okay.  Consistent with his testimony, no.  There would not.

(Tr. 665-66.)  Of course, Filus's argument is without merit.  Because the ALJ ultimately found Filus's symptom testimony only partially credible, the ALJ did not rely on the foregoing hypothetical that fully credits his symptom testimony.  *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007) (explaining that an ALJ is "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible").  Therefore, Filus's step five argument is of no moment.

27